UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| MARTIN A. WACHEL      Plaintiff, | ) ) ) | |
| v. | ) ) | CAUSE NO.: 2:05-CV-00292-PRC |
| FIRST COLONY LIFE INSURANCE CO. and TRANSAMERICA OCCIDENTAL LIFE INSURANCE CO.,      Defendants. | ) ) ) ) ) | |

**OPINION AND ORDER**

This matter is before the Court on a Motion to Disqualify Counsel [DE 46] and a Brief in Support of the Motion to Disqualify [DE 47], filed by Plaintiff Martin A. Wachel on February 16, 2007.  For the following reasons, the Court denies the Motion to Disqualify Counsel.

**PROCEDURAL BACKGROUND**

On July 14, 2005, Plaintiff Wachel filed a Complaint for Declaratory Relief in Lake County Superior Court seeking declaratory judgment finding Defendants First Colony Life Insurance Company ("First Colony") and TransAmerica Occidental Life Insurance Company ("TransAmerica") liable to Plaintiff on life insurance policies issued by each on the life of David Allen Kandelec ("Kandalec"). On August 4, 2005, Defendants removed the case to this Court.

On September 6, 2005, Defendants filed First Colony and TransAmerica's Answer to Complaint and Affirmative Defenses.

On October 27, 2005, upon full consent of the parties, this case was reassigned to the undersigned Magistrate Judge.

On July 19, 2006, Plaintiff Wachel filed Plaintiff's First Amended Complaint for Declaratory Relief. On August 4, 2006, Defendants filed First Colony and TransAmerica's Answer to Plaintiff's Amended Complaint and Affirmative Defenses.

On February 16, 2007, Plaintiff Wachel filed the instant Motion and supporting Brief. On March 5, 2007, Defendants filed First Colony Life Insurance Company's and TransAmerica Occidental Life Insurance Company's Response to Motion to Disqualify. Plaintiff Wachel has not filed a reply and the time to do so has passed.

## FACTUAL BACKGROUND

The following are the facts according to the parties' briefs and attached exhibits. On January 31, 2003, Kandalec signed an application for life insurance with TransAmerica seeking insurance in the amount of one million dollars ($1,000,000) ("TransAmerica policy"). On or about February 24, 2003, TransAmerica received an Attending Physician Statement from Dr. Fred Adler detailing his treatment of Kandalec from February 13, 1998 through February 14, 2003. On March 15, 2003, Defendant TransAmerica issued the TransAmerica policy (Number 42093931) on Kandalec's life, which listed Wachel as the sole beneficiary.

On April 7, 2003, insurance broker Norman Akin (Akin) of Leisure Werden & Terry forwarded Kandalec's application for an additional term life insurance policy in the amount of two hundred fifty thousand dollars ($250,000) to First Colony ("First Colony policy"). Plaintiff Wachel alleges that the materials that Akin sent to First Colony included Kandalec's application for the TransAmerica policy and the same medical evaluation that Kandalec originally submitted to TransAmerica to obtain the TransAmerica policy. Plaintiff Wachel also alleges that Akin was the same insurance broker who helped Kandalec obtain the TransAmerica policy.

2

On May 5, 2003, First Colony issued the First Colony policy (Number 8,172,263) on Kandalec's life, which listed Wachel as the sole beneficiary. Kandalec died on May 22, 2004. When Wachel filed for benefits under both policies, TransAmerica and First Colony sought to rescind the policies and return the premiums, alleging that Kandalec had made material misrepresentations about his medical history on his applications for the policies. Wachel then filed suit to obtain a declaratory judgment that TransAmerica and First Colony are liable to him for the benefits pursuant to the policies.

## ANALYSIS

Plaintiff Wachel now moves to disqualify the firm Chittendon Murday & Novotny, LLC ("Chittendon") from acting as counsel for both Defendants TransAmerica and First Colony, arguing that the interests of the Defendants are in direct conflict with one another. Specifically, Plaintiff Wachel alleges that First Colony relied on TransAmerica's underwriting information when First Colony made its decision to insure Kandalec, and thus First Colony may now assert a claim against TransAmerica for indemnification. Because of this potential claim, Plaintiff Wachel asserts that Chittendon may not undertake representation of both First Colony and TransAmerica pursuant to Indiana Rule of Professional Conduct 1.7(b).

The Seventh Circuit has cautioned that disqualification is a prophylactic device employed to protect the attorney-client relationship and is a "drastic measure which courts should hesitate to impose except when absolutely necessary." *Cromley v. Board of Ed. of Lockport Township High School Dist. 205*, 17 F.3d 1059, 1066 (7th Cir. 1994) (quoting *Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 721 (7th Cir. 1982)). Motions to disqualify "should be viewed with extreme caution for they can be misused as techniques of harassment." *Freeman*, 689 F.2d at 722.

3

Pursuant to Northern District of Indiana Local Rule 83.5, "[t]he Rules of Professional Conduct, as adopted by the Indiana Supreme Court, and the Standards for Professional Conduct, as adopted by the Seventh Circuit, shall provide standards of conduct for those practicing in this court." N.D. Ind. L.R. 83.5. Under Indiana state law, a trial court may disqualify an attorney for a violation of the Rules of Professional Conduct that arises from the attorney's representation before the Court. *See Cincinnati Ins. Co. V. Wills*, 717 N.E.2d 151, 154 (Ind. 1999). Turning to the Indiana Rules of Professional Conduct, Rule 1.7 provides:

> (a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if
>> (1) the representation of one client will be directly adverse to another client; *or*
>> (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.
>
> (b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:
>> (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
>> (2) the representation is not prohibited by law;
>> (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; *and*
>> (4) each affected client gives informed consent, confirmed in writing.

Ind. R. Prof. Cond. 1.7 (first and second emphases added); *see also* Ind. R. Prof. Cond. 1.7 comment 8 ("Even where there is no direct adverseness, a conflict of interest exists if there is a significant risk

4

that a lawyer's ability to consider, recommend or carry out an appropriate course of action for the client will be materially limited as a result of the lawyer's other responsibilities or interests"). The commentary to Rule 1.7 explains: "The critical questions are the likelihood that a difference in interests will eventuate and, if it does, whether it will materially interfere with the lawyer's independent professional judgment in considering alternatives or foreclose courses of action that reasonably should be pursued on behalf of the client." Ind. R. Prof. Cond. 1.7 comment 8. The party seeking disqualification bears the burden of showing facts requiring disqualification. *Cardenas v. Benter Farms*, No. IP 98-1067-C T/G, 2001 WL 292576, at *1 (S.D. Ind. Feb. 7, 2001). Finally, a district court possesses "broad discretion" in determining whether disqualification is required in a particular case. *Id.* (quoting *Whiting Corp. v. White Mach. Corp.*, 567 F.2d 713, 715 (7th Cir. 1977) (citation omitted)).

     Plaintiff Wachel argues that First Colony's potential claim for indemnification against TransAmerica is a direct, "non-consentable conflict of interest".[1] Br. Supp. Mot. Disqualify at 1. Citing *Curtis v. American Mutual Insurance Company*, 610 N.E.2d 871 (Ind. App. 1983), the Plaintiff purports to summarize First Colony's alleged position in issuing Kandalec's policy as one in which First Colony is entitled to rely, but did not necessarily rely, on TransAmerica's underwriting information. However, the facts of *Curtis* in no way involve one insurance company relying on the underwriting information of another insurance company to issue a policy. Moreover, and more significantly, Defendant First Colony itself has not made any assertions that it relied on TransAmerica's underwriting information in issuing Kandalec's policy. At this point in time in the

---

[1] Plaintiff cites no case law or any other evidence in support of its assertion that the purported conflict of interest in this case is "non-consentable."

litigation, Plaintiff's unfounded assertion that First Colony actually relied on information from TransAmerica is nothing more than mere speculation.

The Plaintiff next cites *Ruhlig v. American Community Mutual Insurance Company*, 696 N.E.2d 877, 881 (Ind App. 1988), to support the proposition that First Colony will inevitably have a claim of indemnification against TransAmerica because each company used the same broker to issue Kandalec's policies. However, *Ruhlig* does not address such a fact pattern or support the inference that First Colony will necessarily have a claim against TransAmerica for indemnification.

Here, while the case law on Rule 1.7 and joint representation is thin, the Court notes that the Indiana Court of Appeals has explained that joint representation is not a *per se* violation of Rule 1.7. *See Hanna v. Indiana*, 714 N.E.2d 1162, 1167 (Ind. Ct. App. 1999) ("A possible conflict does not itself preclude the representation"). Moreover, Rule 1.7 specifically contemplates a client's ability to consent to joint representation after consultation with the lawyer if the lawyer reasonably believes that the joint representation will not negatively affect the representation or the lawyer's relationship with the other client(s) represented. Ind. R. Prof. Cond. 1.7(b)(1), (4). The *Hanna* Court also noted that a court should consider "whether the client wishes to accommodate the other interest involved." *Hanna*, 714 N.E.2d at1167. The *Hanna* Court further acknowledged that, in some cases, "certain advantages might accrue from joint representation". *Id*. at 1166.

Upon careful review of Chittendon's representation of both First Colony and TransAmerica along with the requirements of Indiana Rule of Professional Conduct 1.7, this Court finds no bar to joint representation at this time. At the outset, this Court acknowledges that the possibility that a conflict of interest between clients may arise is inherent in many scenarios of joint representation. However, at this time, there is no specific evidence that Chittendon's representation of both First

6

Colony and TransAmerica will be directly adverse to either client or materially limit the law firm's ability to represent the interests of either client. *See* Ind. R. Prof. Cond. 1.7(a). None of the cases cited by the Plaintiff nor the deposition of Dr. Adler support the proposition that First Colony and TransAmerica have a concurrent conflict of interest at this point in the case.[2]

In accordance with Rule 1.7, in the absence of any evidence establishing a concurrent conflict of interest, this Court will not require Chittendon to obtain informed, written consent from First Colony and TransAmerica. While it is certainly prudent (if not essential) for an attorney providing joint representation of co-defendants to obtain informed, written consent from each defendant involved, the language of Rule 1.7 only *requires* an attorney to obtain such consent when joint representation involves a concurrent conflict of interest. However, in the instance that the circumstances in this case change and a concurrent conflict of interest arises between Defendants First Colony and TransAmerica, the Court may, upon motion, revisit the issue. Therefore, within the context of the instant Motion only and based upon the evidence currently before the Court, the Court finds that no concurrent conflict of interest exists at this time and thus the Court declines to disqualify Chittendon Murday & Novotny, LLC for any alleged violation of Indiana Rule of Professional Conduct 1.7.

---

[2]Moreover, assuming *arguendo* that a concurrent conflict of interest later arises, the exception in subsection (b) appears to apply here, in that: (1) Chittendon has asserted that it reasonably believes that it will be able to provide competent and diligent representation to both First Colony and TransAmerica and the Plaintiff has presented no evidence to the contrary, s*ee* Ind. R. Prof. Cond. 1.7(b)(1); (2) Plaintiff Wachel has not presented any evidence that joint representation of First Colony and TransAmerica violates any law, *see* Ind. R. Prof. Cond. 1.7(b)(2); (3) neither First Colony nor TransAmerica has asserted a claim against the other in this litigation or in any other proceeding in which Chittendon has represented one or both and Wachel has failed to produce evidence to the contrary, *see* Ind. R. Prof. Cond. 1.7(b)(3); and (4) in its brief, Chittendon expressed its willingness to obtain informed, written consent from both Defendants First Colony and TransAmerica, if this Court deems it necessary.

## CONCLUSION

Based on the foregoing, the Court hereby **DENIES** Plaintiff's Motion to Disqualify Counsel [DE 46]. Further, the Court **DENIES** the Defendants' request in their Response to Motion to Disqualify for costs and fees associated with responding to the instant Motion.

SO ORDERED this 11th day of May, 2007.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc:   All counsel of record.